IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORMAN DEAN,<br><br>               Plaintiff,<br><br>vs.<br><br>CHEROKEE INSURANCE COMPANY, ROYAL TRUCKING COMPANY, and PHILIP ARTHUR CAIN,<br><br>               Defendants. | CIVIL ACTION<br>FILE NO. 1:18-cv-04914-WMR |

## PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT HANADA COX, CPC

COMES NOW, Norman Dean, Plaintiff in the above-styled civil action, and pursuant to Local Rule 26.2C and Federal Rule of Civil Procedure 37(c)(1), as well as F.R.E. 701 & 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), respectfully moves the Court for an order excluding the testimony of Defendants' expert Hanada Cox, CPC for the reasons enumerated in the accompanying brief in support of this motion.

- 2 -

Respectfully submitted,

**THE HOUGHTON LAW FIRM, LLC**


By: */s/ John A. Houghton*
**JOHN A. HOUGHTON**
Georgia Bar No. 118206

2860 Piedmont Road NE, Suite 250
Atlanta, Georgia 30305
Phone: (404) 549-3006
Fax: (404) 592-6471
john@houghtonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day of April 20, 2020 electronically filed the foregoing PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT HANADA COX, CPC with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Jeffrey W. Melcher, Esq.
W. Shawn Bingham, Esq.
Eleanor Jolley, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
One Atlanta Plaza
950 East Paces Ferry Road, NE
Suite 2850
Atlanta, Georgia 30326
*Counsel for Defendants*

This 20th day of April, 2020

THE HOUGHTON LAW FIRM, LLC

By: */s/ John A. Houghton*
**JOHN A. HOUGHTON**
Georgia Bar No. 118206

2860 Piedmont Road NE, Suite 250
Atlanta, Georgia 30305
Phone: (404) 549-3006
Fax: (404) 592-6471
john@houghtonlawfirm.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORMAN DEAN,<br><br>        Plaintiff,<br><br>vs.<br><br>CHEROKEE INSURANCE COMPANY, ROYAL TRUCKING COMPANY, and PHILIP ARTHUR CAIN,<br><br>        Defendants. | CIVIL ACTION<br>FILE NO. 1:18-cv-04914-WMR |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT
HANADA COX, CPC**

COMES NOW Plaintiff Norman Dean and hereby files his brief in support of his motion to exclude the testimony of Defendants' expert Hanada Cox and shows the Court as follows:

### I.    FACTUAL BACKGROUND

This case involves a tractor-trailer collision that occurred at approximately 11:55 a.m. on October 26, 2016 on Highway 61 in Carroll County, Georgia. Defendant Philip Cain was operating a Royal Trucking tractor-trailer on Highway 61 southbound in Carroll County, Georgia. At about the same time, Plaintiff Norman

Dean was operating his sedan on Highway 61 Southbound in the lane to the left of Defendant Cain's vehicle.

At some point, Defendant Cain attempted to merge to the left lane so that he could get on I-20 eastbound. (**Exhibit #1**, Deposition of Defendant Cain, p. 42, ll. 24-25; p. 43, ll. 1, p. 45, ll. 1-23)  As a result of this maneuver, Defendant Cain struck the passenger's side of Plaintiff Norman Dean's car causing moderate damage from the front passenger side fender to the rear passenger side quarter panel, including tearing through the front passenger tire. (See **Exhibit #2** Accident Report). Plaintiff Norman Dean reported low back pain to the investigating officer at the scene of this collision and went to Tanner Medical Center emergency room later that same day. Plaintiff Dean sustained injuries and aggravated a prior condition to his lower back in this collision that has now required a posterior lumbar fusion surgery. (**Exhibit #3,** Deposition of Treating Neurosurgeon Christopher Tomaras, MD, p. 60, ll. 21-25, p. 61, ll. 1-6, ll. 10-14)

Defendant Cain admits that at the time this wreck happened, he was in the middle of a merge maneuver trying to get in the left lane. (Exhibit #1, Deposition of Defendant Cain, p. 42, ll. 24-25; p. 43, ll. 1, 9-16)  Defendant Cain was assigned fault by the Villa Rica police officer for misjudged clearance; Plaintiff Norman Dean

was assigned no contributing factor in causing the wreck. (Exhibit #2, Accident Report) Defendant Royal Trucking Company deemed this wreck to be preventable on the part of Defendant Cain. (**Exhibit #4**, Deposition of Royal Trucking Director of Safety Compliance & Risk Chris Makamson, p. 52, ll. 11-17) Defendants in each of their defensive pleadings have denied liability. (**Exhibit #5**, See Answers, para 14, 15, and 16)

<u>Designation of Hanada Cox, CPC as an Expert & Her Testimony</u>

Hanada Cox is a medical coder for a company called Elevate and is a proffered expert in the area of "medical auditing and analysis." Ms. Cox was asked to perform "a medical bill audit analysis and record review" on the reasonable value of the past medical services provided to Norman Dean." (**Exhibit #6**, See Med Bill Audit Analysis and Record Review, p. 2)

Ms. Cox was first contacted by defense counsel on October 2, 2019 to be retained as an expert in this case. (**Exhibit #7,** Deposition of Hanada Cox, p. 15, ll. 19-23)[1]  Defendants did not provide notice to Plaintiff that Hanada Cox was an expert until January 19, 2020 which was over three and a half (3½) months after initially retaining her. (**Exhibit** #8, See Defendant's 2nd Supplemental Disclosure)

---

[1] A miniscript of Hanada Cox's deposition has been provided in its entirety

Defendants did not provide Plaintiff with Ms. Cox's expert report until five (5) days before the expiration of the extended discovery period.[2] (Exhibit #7, Deposition of Hanada Cox, p. 17, ll. 20-25)

Ms. Cox's primary opinion is "that the total of $222,485.26 in medical charges in this case is excessive for the procedures and care performed" and she estimates "the reasonable and customary value to be $56,184.42" (Exhibit #7, Deposition of Cox, p. 47, ll. 20-25, p. 48, ll. 1-3)  Ms. Cox's methodology primarily involves reviewing and testifying about Health & Human Service figures on medical billing values contained in publications like Wasserman's Physician Fee reference, PMIC medical fees, and Optum's National Fee Analyzer. (Exhibit #7, Deposition of Cox, p. 19, ll. 24-25; p. 20, ll. 1-4). For each physician and facility bill, Ms. Cox based her opinion of reasonable value on the median of the 75th percentile of the physician fees published in the reference material. (Exhibit #7, Deposition of Cox, p. 22, ll. 12-25)

Ms. Cox was unable to testify as to why she used the median of the 75th percentile other than it being "the percentile that I have used throughout my career. It is the most relied upon. It is not the lowest, it is not the highest. It is the most

---

[2] The already extended discovery period concluded on January 24, 2020

- 4 -

objective percentile, so what it's saying is that 75 percent of the charges are at this number or below." (Exhibit #7, Deposition of Cox, p. 27, ll. 22-25; p. 28, ll. 1-8)

Ms. Cox was unable to testify to the accuracy of this purported methodology:

> Q: You say it's the most commonly used and most relied upon, but is there any objective publication that says -- or any objective authority that says 75 percent is the most accurate percentile to use when computing reasonable values for medical services?
>
> A: Well, it's not using accuracy. There is percentile, 50, 75 and 90. 75th percentile is just the ones that is the -- not the lowest again and not the highest. So it is the one that's objective to, you know, being kind of the middle of the spectrum when it comes to determining what that value is at a percentage that's, like I said, not the lowest and not the highest.

(Exhibit #7, Deposition of Cox, p. 27, ll. 9-22)

Ms. Cox did not play any role in the underlying calculations she was relying upon and was unable to provide any testimony about how these calculations were made:

> Q   You -- you personally don't know exactly how the federal government comes up with a base unit value for any of these procedures, right?
>
> A   Well, these are all procedures that the data is collected from every provider that's out there for every service, for every -- in every city. So it's actual data that's being collected and it's averaged out and then given to these other databases.
>
> Q   But you don't play any role in that calculation nor do you know exactly how they made that calculation, right?

> A   I don't work for the Department or have worked for the Department of Health and Human Services, no.
>
> Q   And again, the underlying calculations and data, those are not calculations and data that you came to. You just utilized those to provide your figures and your opinions, right?
>
> A   Correct, those are not -- yes, I did not create the geographic modifier.

(Exhibit #7, Deposition of Cox, p. 44, ll. 11-25; p. 47, ll. 4-9)

Aside from her designation as a Certified Professional Coder when she worked in a medical billing office, Ms. Cox has no formal education in statistical analysis, has no experience working for a neurosurgeon's office, and has no understanding of how much it costs to run a surgical center. (Exhibit #7, Deposition of Cox, p. 41, ll. 4-9, p. 38, ll. 15-22)

The published material itself that Ms. Cox relied upon even provided a disclaimer concerning their accuracy in determining reasonable and customary physician fee figures. The Wasserman publication provides the following: "The information in this product is an opinion which may or may not prove to be accurate and should not be the sole basis for making decisions about a medical practice or the marketplace in general." (Deposition of Cox, p. 41, ll. 10-17)   Further, the Wasserman publication states that it makes "no representation or warranty that this product will meet any legal or statutory requirements, including requirements for

establishing usual, customary and reasonable fees." (Exhibit #7, Deposition of Cox, p. 43, ll. 2-10)

Ms. Cox is unaware of the reason that Wasserman provided these disclaimers for these publications.

> Q   You're presuming their reasoning for putting that disclaimer out there. You've never personally spoken with anybody at Wasserman about why they have that disclaimer, right?
>
> A   I haven't personally spoken to anybody at Wasserman, correct.

(Deposition of Cox, p. 44, ll. 25; p. 47, ll. 1-5)

## II.   ARGUMENT & CITATION OF AUTHORITY

The Court has broad discretion in excluding expert testimony based on the timeliness of the disclosures under Local Rule 26.2C and Federal Rule of Civil Procedure 37(c)(1). The Court also has broad discretion in excluding expert testimony based on the relevance and reliability of the opinion. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### A. **Defendants Did Not Designate Hanada Cox Sufficiently Early in Discovery Period to Allow Plaintiff to Name Its Own Medical Billing Expert**

Federal Rule of Civil Procedure 26 provides that expert disclosures must occur at the times and in the sequence that the Court orders. Fed. R. Civ. P.

26(a)(2)(C). This Court's Local Rules set forth the following guidelines regarding the disclosure of expert witnesses:

> Any party who desires to use the testimony of an expert witness shall designate the expert witness sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery. **Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer testimony of the party's expert**, unless expressly authorized by court order based upon a showing that the failure to comply was justified. LR 26.2C, ND Ga [Emphasis supplied]

Here, Defendants waited over three and a half (3½) months from the date they retained Hanada Cox, CPC to designate her as an expert. (Exhibit #7, Deposition of Cox, p. 15, ll. 19-23, and Defendants' 2nd Supplemental Disclosure) Defendants waited until only five (5) days remained in the extended discovery period to designate Ms. Cox as an expert and produce her expert report. (Exhibit #7, Deposition of Cox, p. 17, ll. 20-25).

In doing so, the defense made it a virtual certainty that Plaintiff would be unable depose this out-of-state (Virginia) expert and make a timely determination as to whether to retain and designate his own rebuttal medical billing expert.

Designating expert witnesses less than a week before the expiration of the (already extended) discovery period completely runs afoul of the requirement that expert witnesses be designated "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert." LR 26.2C, NDGa.

The Defendants' failure to take the steps to designate her and any others in a proper manner as expert witnesses earlier in the discovery period cannot be excused. See APA Excelsior III, L.P. v. Windley, 329 F. Supp. 2d 1328, 1338 (N.D. Ga. 2004) (finding no justification for a party's failure to designate in a timely fashion an expert witness where the party was on notice during discovery that the expert testimony would be needed). On this basis alone, the Defendants should not be allowed to offer Ms. Cox's testimony as an expert at trial. She should be excluded.

### B. Cox's Testimony is Inadmissible Under FRE 702 and The Daubert Standard

FRE 702 governs the admissibility of expert testimony in civil cases. Section 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court acts as a gatekeeper, "assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)

In determining the admissibility of expert testimony under FRE 702 and Daubert "a trial court must assess three aspects of proposed expert testimony — the qualifications of the expert, the reliability of the testimony, and the relevance of the testimony — to discharge its responsibilities as a gatekeeper." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004). Further, Defendants must prove Cox is qualified, that her testimony is reliable, and that her testimony would be helpful to the jury. United States v. Frazier, 387 F3d 1244, 1260 (11th Cir. 2004)

In this case, Cox's testimony is inadmissible because her methodology is not reliable under FRE 702 and Daubert.

### 1. Cox's Methodology is Not Reliable

In determining whether expert testimony is reliable under Daubert, the trial court must consider whether "the methodology by which the expert reaches his conclusions is sufficiently reliable." Seamon v. Remington Arms Co., LLC, 813 F3d. 983, 988 (11th Cir, 2016) Courts should consider the following factors in evaluating the reliability of expert testimony:

1. Whether the theory or technique employed by the expert is generally accepted in the scientific community;

2. Whether it has been subjected to peer review and publication;

3. Whether it can be and has been tested;

4. Whether the known or potential rate of error is acceptable; Daubert at 593, 594.

Here, Cox's methodology is reading government figures on billing rates in reference material and creating opinions of purported reasonable value based on the median of the 75th percentile of the physician fees. (Exhibit #7, Deposition of Cox, p. 22, ll. 12-25) Again, she provides no basis for why she uses the 75th percentile other than it being "the percentile that I have used throughout my career. It is the most relied upon. It is not the lowest, it is not the highest. It is the most objective

percentile, so what it's saying is that 75 percent of the charges are at this number or below." (Exhibit #7, Deposition of Cox, p. 27, ll. 22-25; p. 28, ll. 1-8)

With regard to her methodology being peer reviewed or published, Ms. Cox was unable to provide any publication or objective authority that says 75 percent is the most accurate percentile to use when creating the purported reasonable value opinions. (Exhibit #7, Deposition of Cox, p. 27, ll. 9-22) Rather, she testified that the governmental figures in Wasserman's that she relied upon are not 'using accuracy' and that 75th percentile is just the "middle of the spectrum" figure. (Exhibit #7, Deposition of Cox, p. 27, ll. 9-22) Ms. Cox did not play any role in the underlying calculations nor did she know exactly how they made those calculations upon which she relied. (Exhibit #7, Deposition of Cox, p. 44, ll. 11-25; p. 47, ll. 4-9) Further, her expert report does not contain any information related to any testing of her methodology or any error rates in its implementation. (Exhibit #6, Medical Bill Audit Analysis and Record Review)

The only support Cox cites for her methodology are the source materials from which she derives the Health and Human Services percentile figures (Wasserman's, PMIC Reference, Optum). Even the Wasserman source publication warns against its own usage for accuracy and provides the disclaimer that it "should not be the sole

basis for making decisions about a medical practice or the marketplace in general." (Exhibit #7, Deposition of Cox, p. 41, ll. 10-17)

Cox's testimony is the precise type of untestable, unreliable data that Daubert and the Federal Rules of Evidence were designed to exclude from evidence at trial. It is a defense tactic disguised as expert testimony. While it is true that cross-examination can effectively expose a weak expert opinion, the Court cannot allow an expert to testify when there is no discernable process or reliable method by which the expert's opinion was generated. Ward v. Shoney's, Inc., 847 A.2d 367 (Del. 2002). And this would not be the only time Cox's opinions have been excluded by a Court. (Exhibit #7, Deposition of Cox, p. 8, ll. 18-24)

Cox's methodology is not reliable and must be excluded. Plaintiff moves to exclude Cox's testimony because it does not meet the standard set under FRE 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. for admissibility.

## CONCLUSION

Accordingly, and for the foregoing reasons, Plaintiff respectfully requests that the Court exclude from trial the testimony of Defendants' expert Hanada Cox.

This the 20th day of April, 2020.

                                                  Respectfully Submitted,

                                                  **THE HOUGHTON LAW FIRM, LLC**

                                                  By: */s/ John A. Houghton*
                                                  **JOHN A. HOUGHTON**
                                                  Georgia Bar No. 118206
                                                  *Attorneys for Plaintiff*

2860 Piedmont Road, NE
Suite 250
Atlanta, Georgia 30305
Phone: (404) 549-3006
Fax: (404) 592-6471
john@houghtonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day of April 20, 2020 electronically filed the foregoing BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT HANADA COX, CPC with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Jeffrey W. Melcher, Esq.
W. Shawn Bingham, Esq.
Eleanor Jolley, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
One Atlanta Plaza
950 East Paces Ferry Road, NE
Suite 2850
Atlanta, Georgia 30326
*Counsel for Defendants*

This 20th day of April, 2020

**THE HOUGHTON LAW FIRM, LLC**

By: */s/ John A. Houghton*
**JOHN A. HOUGHTON**
Georgia Bar No. 118206

2860 Piedmont Road NE, Suite 250
Atlanta, Georgia 30305
Phone: (404) 549-3006
Fax: (404) 592-6471
john@houghtonlawfirm.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1B.  This motion has been prepared in Times New Roman font, 14 point, doubled-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

This 20th day of April, 2020

**THE HOUGHTON LAW FIRM, LLC**

By: */s/ John A. Houghton*
**JOHN A. HOUGHTON**
Georgia Bar No. 118206

2860 Piedmont Road NE, Suite 250
Atlanta, Georgia 30305
Phone: (404) 549-3006
Fax: (404) 592-6471
john@houghtonlawfirm.com