**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NORMAN DEAN,<br><br>        Plaintiff,<br><br>v.<br><br>CHEROKEE INSURANCE COMPANY, ROYAL TRUCKING COMPANY and PHILIP ARTHUR CAIN,<br><br>        Defendants. | CIVIL ACTION FILE<br><br>NO. 1:18-CV-04914-WMR<br><br>JURY TRIAL DEMANDED |

## <u>DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND INCORPORATED BRIEF IN SUPPORT</u>

COME NOW Defendants Cherokee Insurance Company, Royal Trucking Company, and Philip Arthur Cain, pursuant to Federal Rules of Civil Procedure 26 and 37, and hereby move the Court to strike any expert opinions purporting to establish a causal link between the subject accident and Plaintiff's alleged injuries and/or the need for a spinal fusion surgery, particularly those expressed by Plaintiff's treating physician, Dr. Christopher Tomaras because he has not provided a Rule 26 expert report, nor was he properly disclosed as an expert, nor is he qualified to offer

some of the "opinions" he renders in support thereof, Defendants show the Court as follows:

## I.     INTRODUCTION

Plaintiff filed this lawsuit seeking to recover general, special, and punitive damages for personal injuries allegedly sustained as the result of a 2016 motor vehicle accident. In part, Plaintiff seeks to recover his past medical expenses for a March 2017 spinal fusion surgery and future medical expenses for a related surgery. Plaintiff never properly disclosed a medical expert to support these allegations, and instead, attempts to rely on the unreliable and speculative causation opinions of one of his twenty-four identified treating medical providers. Defendants, therefore, file this Motion seeking to exclude any causation opinion testimony offered by any undisclosed expert or treating physician, including but not limited to Dr. Christopher Tomaras.

## II.     FACTUAL BACKGROUND

### A. **Factual Summary**.

This case arises from a motor vehicle accident that occurred on October 26, 2016 in which Plaintiff's vehicle was struck from the side by Defendants' tractor-

2

trailer as Defendant truck driver Cain was merging into the left lane.[1] Plaintiff alleges he sustained a posterior protrusion, spurs at L4-S1, and a posterior disc bulge at L3-L4. (Doc. 9, p. 2). Plaintiff then filed this lawsuit seeking to recover monetary damages for his past and future medical expenses, and pain and suffering.

## B. <u>Procedural Background.</u>

This action was removed to this Court on October 24, 2018. (Doc. 1). On December 6, 2018, Plaintiff filed his initial disclosures in which he identified twenty-four treating medical providers as "non-retained Experts," one of which was Dr. Christopher Tomaras, Plaintiff's treating neurosurgeon. (Doc. 9-2). Plaintiff did not identify a single retained expert or provide an expert disclosure at that time. (Docs. 9, 9-1, 9-2, 9-3, 9-4, 9-5).

On December 6, 2018, this Court entered a Scheduling Order providing a four-month period for discovery. (Doc. 11). On June 3, 2019, the Court granted the parties' Joint Motion to Extend Discovery, thereby extending discovery until October 18, 2019. (Doc. 24). On October 9, 2019, the Court granted Defendants' Motion for Extension of Time to Complete Discovery until January 24, 2020. (Doc. 41). On January 22, 2020, the parties filed another Joint Motion to Extend Discovery

---

[1] Defendants deny any and all liability in this matter.

10697273v.1

to allow Defendants to take the deposition of Plaintiff's back surgeon, Dr. Tomaras, and Defendants' experts. (Doc. 56). The Court denied this motion on January 24, 2020 and stated all deadlines remained the same. (Doc. 58).

### C. **Plaintiff Failed To Identify Any Expert During Discovery.**

On December 27, 2018, Defendant Cain served Plaintiff with First Interrogatories. (Doc. 13). Interrogatory No. 4 asked Plaintiff to identify all experts he intended to utilize in this matter. (See Plaintiff's Responses to Cain's Interrogatories, attached hereto as Exhibit "A"). In response thereto, Plaintiff stated: "Plaintiff anticipates calling non-retained law enforcement personnel and non-retained medical professionals at trial to offer opinion testimony regarding the causation of this wreck and Plaintiff's injuries." Id. Plaintiff also directed Cain to the Accident Report, medical records, and bills produced in response to Cain's Requests for Production of Documents. Id.

To date, Plaintiff has not supplemented his discovery responses identifying a single expert or served Defendants with an expert disclosure. It was not until January 29, 2020, five days after the close of discovery, during defense counsel's deposition of Dr. Tomaras, that Plaintiff's counsel expressed his intent to tender Dr. Tomaras as an expert in this matter. (See transcript of C. Tomaras, attached hereto as Exhibit "B", 60:17-19) ("Q: At trial, I'll probably tender you as an expert, but I just wanted

4

to get through those qualifications right now."). This statement was the first notice Defendants were given regarding Plaintiff's intent to offer Dr. Tomaras as an expert in this matter.

### D. Subject Testimony of Christopher Tomaras, MD.

Defendants noticed Dr. Tomaras' deposition to discover his diagnosis and treatment of Plaintiff including his fusion surgery and the need for future medical treatment. Upon the completion of defense counsel's cross-examination, Plaintiff's counsel proceeded to ask Dr. Tomaras questions regarding his opinions as to the causation of Plaintiff's alleged injuries and mechanism of injury. Defendants do not seek to exclude Dr. Tomaras' testimony regarding the basic facts of his treatment of Plaintiff that do not require any medical expertise. However, any opinion testimony requiring medical expertise should be excluded because of Plaintiff's failure to disclose Dr. Tomaras.  Additionally, such opinion testimony does not satisfy the admissibility standards set forth in Federal Rules of Evidence 702. Therefore Defendants seek to exclude any expert opinions offered by Dr. Tomaras, including, but not limited to, any *opinions* regarding the care he provided to Plaintiff, any diagnosis, the details of the surgery performed on Plaintiff's spine, and causation as

5

to any alleged injuries. Examples of testimony that should be barred at trial are as follows[2]:

- "Q: Is it your opinion that this October 2016 tractor-trailer collision, more likely than not, made Norman Dean his fusion surgery in 2017 necessary? A: Yes." (Ex. "B" at 60:21-24);

- "Q: Do you believe the injuries and the need for surgery in this case, more likely than not, resulted from an acute injury sustained in the October 2016 wreck? A: Yes." (Ex. "B" at 61:10-14);

- "Q: Any opinion on whether the impact in this case, which was a lane change sort of pit maneuver, that the biomechanics of that could cause this sort of injury? A: It could." (Ex. "B" at 63:21-64:1).

- Dr. Tomaras' post-treatment review of Plaintiff's 2016 pre-accident records from WellStar Cardiovascular and WellStar Douglas, including but not limited to the observations, diagnosis, and medications contained therein (Ex. "B" at 66:16-76:12);

Each of the above questions elicit expert opinions (and Dr. Tomaras was never disclosed), and do not seek information pertaining to Dr. Tomaras' diagnosis or treatment of Plaintiff. As such, and for the reasons addressed below, these opinions must be stricken from the record and excluded from the trial of this matter.

### III.   ARGUMENT AND CITATION OF AUTHORITIES

---

[2] The following does not provide an exhaustive list of the subject testimony. Defendants likewise seek to exclude any expert testimony as to "why" Dr. Tomaras diagnosed Plaintiff with the subject conditions/injuries.

6

Dr. Tomaras' opinions regarding the causation of Plaintiff's alleged neck, shoulder, and back injuries must be stricken from the record and excluded from the trial of this matter because: (1) Dr. Tomaras was not disclosed as an expert in this matter, and (2) Dr. Tomaras' opinions do not satisfy any of the reliability standards set forth in Fed. R. Evid. 702 and further articulated in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). In accordance with the authority cited below, Dr. Tomaras' testimony must be limited only to his treatment and diagnosis of Plaintiff, and exclude any and all opinions regarding the causation of Plaintiff's alleged injuries at issue in this matter.

### A. <u>Plaintiff Did Not Disclose Any Expert(s) In This Matter</u>.

Pursuant to Fed. R. Civ. P. 26, any individual offering expert opinions must be disclosed. If Plaintiff intends to proffer Dr. Tomaras' opinions as to the causation of Plaintiff's alleged injuries, he is required to disclose Dr. Tomaras as an expert in this matter, the deadline for which has long passed pursuant to this Court's Scheduling Order. (Doc. 41). The disclosure requirements set forth in Fed. R. Civ. P. 26(a)(2)(B) and 26(a)(2)(C) are explicitly clear:

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the

7

case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, **if the witness is not required to provide a written report, this disclosure must state:**

> (i) **the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and**

> (ii) **a summary of the facts and opinions to which the witness is expected to testify.**

Fed. R. Civ. P. 26(a)(2)(B)-(C) (emphasis added).

Plaintiff's Initial Disclosures and Responses to Defendant Cain's Interrogatories do not satisfy any of these disclosure requirements. (See Docs. 9, 9-1, 9-2, 9-3, 9-4, 9-5; Ex. "A"). In fact, this Court addressed this very issue in

8

Abusbeih v. Ansari, Civil Action No. 1:18-cv-01061, 2020 U.S. Dist. LEXIS 43457, *3-5 (N.D. Ga. Feb. 21, 2020). In Abusbeih v. Ansari, the plaintiff identified twenty-five medical professionals, including the one at issue in the defendant's motion to exclude, who had provided medical treatment to the plaintiff. Id. at *3. Plaintiff then produced more than 200 pages of medical records, which included those prepared by the subject provider during the course of his treatment of the plaintiff. Id. at *4. This Court held this did not constitute sufficient disclosure of the treating physician's expert opinions. Id. Because the plaintiff then failed to establish the inadequate disclosure was justified or harmless, the physician was prohibited from offering any expert opinion as to the causation of the plaintiff's injuries. Id. at *5-6.

The facts in the present case are identical to those addressed in Abusbeih v. Ansari. Plaintiff identified Dr. Tomaras as a treating physician in both his Initial Disclosures and responses to Defendant Cain's Interrogatories. (Doc. 9-2; Ex. "A"). Plaintiff then provided several hundred pages of medical records, all of which were records prepared and maintained during the respective treating physicians' course and scope of treatment of Plaintiff. At no point did Plaintiff ever indicate Dr. Tomaras' records were intended to be an expert disclosure. Plaintiff never provided the expected subject matter of Dr. Tomaras' opinions or a summary of the facts and opinions on which he was expected to testify.  Most importantly, Plaintiff never

9

informed Defendants or their counsel that he intended to proffer Dr. Tomaras as an expert in this matter until midway through defense counsel's deposition. (Ex. "B" at 60:17-19).

## 1. **Dr. Tomaras' testimony exceeds the scope of diagnosis and treatment and require expert disclosure.**

In response to this motion, Defendants anticipate Plaintiff will argue Dr. Tomaras was a treating physician who he did not need to disclose as an expert pursuant to Fed. R. Civ. P. 26. However, the label of "treating physician" is not dispositive; instead the determination turns on the substance of the physician's testimony and the base for the opinions. See Kondragunta v. Ace Doran Hauling & Rigging Co., Civil Action No. 1:11-cv-01094-JEC, 2013 U.S. Dist. LEXIS 39143, *31 (N.D. Ga. Mar. 20, 2013) (citations omitted). "Unless the treating physician is going to be limited to testifying about facts in a lay person capacity, the physician must be disclosed as an expert and must provide either the summary of disclosures or an expert report." Rangel v. Anderson, 202 F. Supp. 3d 1361, 1364-65 (S.D. Ga. 2016). See also Barnes v. Whitfield, 2016 U.S. Dist. LEXIS 144084, *3 (S.D. Ga. Oct. 18, 2016) (citation omitted) ("Even when not retained, treating physicians must be disclosed in accordance with Rule 26(a) where they intend to offer opinions unrelated to treatment based on their special knowledge."). "[I]f a physician's

opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required, albeit the Subsection C report… will be required…. If the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required." See Kondragunta v. Ace Doran Hauling & Rigging Co., 2013 U.S. Dist. LEXIS 39143 at*37-38 (citations omitted). Any testimony beyond a treating physician's own perception and observation is expert testimony and requires Plaintiff's counsel to comply with Rule 26(a)(2)(A)'s identification and Rule 26(a)(2)(B)'s disclosure requirements. Id. at 31. See also King v. Novartis Pharms. Corp., Civil Action No. 4:12-CV-685, 2014 U.S. Dist. LEXIS 189745 (N.D. Tex. Feb. 4, 2014) ("Because Hunter's [treating physician's] causation opinion was apparently formulated after this treatment of Plaintiff, Plaintiff should have provided a written report regarding his testimony under Rule 26(a)(2)(B).").

The Eleventh Circuit addressed this issue in Wilson v. TASER Int'l, Inc., 303 Fed. Appx. 708, 712-13 (11th Cir. 2008). The plaintiff filed suit against defendant for injuries he sustained while attending one of the defendant's training classes. Id. at 710. Shortly after the subject class, the plaintiff went to Dr. Edward Meier for treatment. Id. Dr. Meier ordered an MRI six weeks later which revealed two compression fractures of his spine. Id. After the close of discovery, and in response

11

to the defendant's motion for summary judgment, the plaintiff presented an affidavit of Dr. Meier in which he opined the cause of the plaintiff's alleged injury was TASER exposure during the subject training class. Id. TASER objected to the affidavit on the grounds the plaintiff did not previously disclose Dr. Meier as an expert or produce an expert report for him. Id.

"A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." Wilson v. TASER Int'l, Inc., 303 Fed. Appx. at 712 (citations omitted). However, opinions regarding the cause of an injury is a hypothesis. Id. at 712-13. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) ("Her diagnosis of the injury itself, that Grant's jaw was fractured, would be permissible lay testimony, but her statement about the cause of the injury was, as she admitted, a 'hypothesis.'"). "And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." Wilson v. TASER Int'l, Inc., 303 Fed. Appx. at 713. As such, the plaintiff was required to disclose Dr. Meier pursuant to Rule 702. Id. The same such logic should apply to the present case, requiring Plaintiff to have properly disclosed Dr. Tomaras as a testifying expert witness.

It is abundantly clear, and at this point indisputable, that Plaintiff is going to attempt to tender Dr. Tomaras as an expert and admit his causation opinions in this

12

matter. (Ex. "B" at 60:17-19).However, because Plaintiff failed to ever identify Dr. Tomaras as an expert or provide an expert report regarding his opinions, his testimony must be stricken from the record and barred from the trial of this matter.

**2. Dr. Tomaras is not qualified to give biomechanical expert testimony.**

Plaintiff's counsel asked Dr. Tomaras a number of questions regarding his opinions as to Plaintiff's alleged mechanism of injury and the force of impact purportedly suffered by Plaintiff in the accident. (Ex. "B" at 63:21-64:1). As Dr. Tomaras admitted, he is not a biomechanical engineer and is not qualified to render any analysis regarding the forces involved in the subject accident. Id. at 52:25-53:5. To the extent Plaintiff attempts to elicit biomechanical opinions and/or opinions as to the force, impact, or mechanism injury in the subject incident, Defendants seek to exclude such opinions on the basis Plaintiff has not properly identified such expert, and to the extent Plaintiff's treating physicians are not qualified to render lay opinions on such topics.

**3. Allowing Plaintiff to cure his failure to disclose will require additional discovery and delay the trial of this matter.**

The Court should not permit Plaintiff to now disclose Dr. Tomaras as an expert in this case. There is no justification for Plaintiff's failure to timely and properly disclose a medical causation expert in this matter. Based on the nature of

13

Plaintiff's alleged injuries and the damages for which he seeks to recover, Plaintiff should have been aware on the day he filed this lawsuit that such injuries and treatment were outside the knowledge and purview of a lay juror, and that expert testimony would be needed to substantiate his claims.

At this time, if Plaintiff were permitted to disclose any of his medical providers as experts, including Dr. Tomaras, Defendants would be undeniably prejudiced and unable to fully defend Plaintiff's claims asserted against them. Plaintiff's failure to comply with Fed. R. Civ. P. 26 and 37 is clear; therefore, Defendants request the Court strike Dr. Tomaras' causation opinions from the record and bar him from introducing such opinions at the trial of this matter.

## B. **If Plaintiff Is Allowed To Untimely Disclose Dr. Tomaras, His Causation Opinions Are Not Admissible Under Fed. R. Evid. 702 And Daubert v. Merrell Dow Pharmaceuticals.**

### 1. **Legal Standard.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and the

14

witness has applied the principles and methods reliably to the facts of the case.

As the Supreme Court articulated <u>Daubert v. Merrell Dow Pharms.</u>, trial courts play a critical "gatekeeping" function as to the admissibility of expert witness' testimony in determining whether the testimony is both relevant and reliable. 509 U.S. 579, 592 (1993). Trial courts must consider:

> (1) whether the theory in question can be and has been empirically tested, that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory in question has been subjected to peer review and publication; (3) the theory's known or potential error rate and whether that rate is acceptable; and (4) whether the theory is generally accepted in the scientific community.

<u>Magbegor v. Triplette</u>, 212 F. Supp. 3d 1317, 1325 (2016) (citations omitted).

To further assist in determining the admissibility of expert testimony, the Eleventh Circuit has developed "a rigorous three-party inquiry," which considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). It is then the admitting party's burden to establish the proffered expert's opinions satisfy these requirements. See Magbegor v. Triplette, 212 F. Supp. 3d 1317, 1324 (2016). As outlined below, Dr. Tomaras' opinions do not satisfy these requirements and must be excluded from the record and trial of this matter.

**2. Dr. Tomaras' opinions as to causation are based on insufficient facts and data.**

Fed. R. Evid. 702 requires an expert's opinions be based upon sufficient facts and data in order to be admissible. As previously stated, Dr. Tomaras' opinions are based solely on Plaintiff's statements regarding the subject accident, onset of pain, and imaging taken after the subject accident. (Ex. "B" at 20:16-18, 51:7-12). He did not review any document, other than his treatment records, and did not consider any prior MRIs, treatment records, or Social Security Disability file materials in developing his opinions. (See Plaintiff's redacted Social Security Administration file, attached hereto as Exhibit "C"). Notably, he did not consider Plaintiff's medical records from June 17, 2016 – less than four months before the subject accident – in which Plaintiff complains chronic low back pain. (Ex. "B" at 51:7-12). Based on Plaintiff's extensive history, and ongoing receipt of Social Security disability

16

benefits for chronic low back pain, it is evident Dr. Tomaras' causation opinions are not based upon reliable and sufficient facts or data.

This Court addressed this very issue in <u>Cooper v. Marten Transp., Ltd.</u>, Civil Action No. 1:10-cv-03044-JOF, 2012 U.S. Dist. LEXIS 191774, *1 (N.D. Ga. June 4, 2012). In <u>Cooper v. Marten Transp., Ltd.</u>, the plaintiffs offered the expert opinions of two of their treating physicians in an attempt to establish the causation of their injuries. <u>Id.</u> at *12. Both doctors testified, to a reasonable degree of medical certainty, that the collision in the case caused the plaintiffs' alleged injuries. <u>Id.</u> These opinions were based on their physical examinations of the plaintiffs, a review of their medical histories, and the treatment of the plaintiffs. <u>Id.</u> The defendants filed a motion to exclude on the grounds that "given Plaintiffs' long history of back problems, degenerative conditions, and obesity, neither [physician] can reliably (sic) opine that the accident at issue caused Plaintiffs' injuries and subsequent need for medical treatment." <u>Id.</u> at *13.

This Court agreed with the defendants and excluded the physicians from testifying as to the causation. In doing so, this Court reviewed the plaintiffs' medical history showing extensive treatment of back pain and degenerative spinal conditions. <u>Id.</u> at *13-14. This Court also noted one of the physicians testified "that it is common for lower back pain to come and go and to worsen with time, especially for

17

individuals like Plaintiffs who are obese and have degenerative conditions," and that he frequently sees patients like the plaintiff who have pain symptoms that come and go over time "without any discernible cause." Id. at *14-15. "The court agrees, and finds that Plaintiffs' subjective complaints of pain during their physical examinations were not sufficiently reliable to establish causation." Id. at *16-17. No matter how qualified the physicians may be, they "cannot reliably opine as to the causation in this case relying primarily on [their] physical examinations of Plaintiffs and the chronology of events." Id. at *17. As such, their opinions were not reliable and could not be offered in support of the plaintiffs' claims.

**3. Dr. Tomaras' causation opinions are not based on reliable methodology.**

Fed. R. Evid. 702 requires Dr. Tomaras' causation opinions be based upon reliable methodology in order to be admissible. It is apparent from Dr. Tomaras' deposition that he did not apply the facts of this case to any accepted methodology while developing his opinions. Instead, he subjectively and conclusively utilized post hac rationalization to tie the chronological sequencing of events following the accident to opine as to a possible case of Plaintiff's alleged injures. Courts have routinely held that such logic and rationalization is insufficient, such that Dr. Tomaras' causation opinions must be excluded. See Guinn v. AstraZeneca Pharms.

18

LP, 602 F.3d 1245, 1254 (11th Cir. 2010) ("Temporal proximity is generally not a reliable indicator of a causal relationship.").

In this case, temporal proximity (based upon limited data) is especially unreliable. First, Dr. Tomaras admits Plaintiff's MRI after the accident revealed extensive chronic, degenerative issues, and that his disc protrusion "could have been an acute process," but not necessarily. (Ex. "B" at 19:10-19). And, a MRI taken before the subject accident could have revealed the exact same information. Id. at 20:20-23. Second, Dr. Tomaras opined that based on Plaintiff's pre-existing degenerative disc disease, it is possible that he could have required surgery regardless of whether the subject accident occurred. Id. at 32:20-22. In short, Dr. Tomaras' causation opinions are nothing more than post hoc rationalization based entirely off of Plaintiff's chronology provided following the subject accident when litigation was already pending. This Court and the Eleventh Circuit Court of Appeals have routinely held that such methodology is not reliable. See Guinn v. AstraZeneca Pharms. LP, 602 F.3d 1245, 1254-55 (11th Cir. 2010).

### 4. Dr. Tomaras did not apply even his own methodology to the facts in this case.

While the reliability of Dr. Tomaras' methodology is questioned, it is further exacerbated by the fact his causation opinions were contradictory to his

methodology and the facts in this case. Simply stated, there is no connection between the facts of this case and Dr. Tomaras' causation opinions other than merely his own assertions. In his deposition, Dr. Tomaras admitted than many individuals, who have Plaintiff's same condition, live with pain and do not seek any treatment. (Ex. "B" at 55:14-19 ("Q: You would agree that some patients with disc herniations and – even with nerve root encroachment choose to live with the pain and do not seek treatment? A: They do. Q: Do you know the percentage of people who walk around with symptomatic herniations in their neck and back and do not seek medical treatment? A: I'm sure it's pretty high."). He also stated that simply because someone does not go to the doctor does not mean they are not having pain. Id. at 55:24-56:1. However, despite admitting to these two generally held theories of human nature, Dr. Tomaras concludes the exact opposite in this case. Id. at 55:14-56:1.

Dr. Tomaras provided no explanation or scientific data to support his *ipse dixit* conclusions. It is clear from Dr. Tomaras' own statements that his opinions have a high error rate and that his opinions are unsupported by the evidence in this case. As such, Dr. Tomaras' causation opinions should be stricken from the record and barred from the trial of this matter.

### C. **Dr. Tomaras' Opinions Do Not Assist The Trier Of Fact In Determining The Medical Causation Of Plaintiff's Alleged Injuries.**

Dr. Tomaras' causation opinions are nothing more than a regurgitation of Plaintiff's subjective statement of his history of present illness and post hac rationalization applied to a limited chronology that conveniently ignores Plaintiff's prior treatment for these same injuries. Plaintiff informed Dr. Tomaras of only the subject October 2016 accident, and Dr. Tomaras simply accepted this accident as the cause of Plaintiff's injuries. Not only is Dr. Tomaras' reasoning flawed and unreliable, his causation opinions do nothing to assist the jury in any meaningful way. See McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) ("Under Daubert, scientific testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts."). As the Eleventh Circuit has repeatedly stated, "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." United States v. Frazier, 387 F.3d 1244, 1262-63 (11th Cir. 2004) (citations omitted). Dr. Tomaras' causation opinions are unnecessarily duplicative of Plaintiff's subjective statements, and are nothing more than the argument Plaintiff's counsel will likely make during his opening and closing statements. Plaintiff can tell the jury exactly what he told Dr. Tomaras, and the jury can assess the credibility of these statements themselves without Dr. Tomaras telling them what to think.

Additionally, because Dr. Tomaras' causation opinions are based upon insufficient and unreliable data, such testimony will likely confuse and mislead the jury by giving unjustified credence to a physician's unsupported conclusion. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004). It can be reasonably expected that the jury would give undue credibility to Dr. Tomaras' causation opinions based solely on the fact he is a physician. For these reasons, Defendants respectfully request the Court strike Dr. Tomaras' causation opinions from the record and bar him from offering such opinions at the trial of this matter.

## IV.   CONCLUSION.

Allowing Dr. Tomaras to present his causation testimony would defeat the purpose of Fed. R. Civ. P. 26 in avoiding surprise to the non-disclosing party and preventing undisclosed treating physicians from offering such expert opinions. Additionally, it would ignore the strict admissibility standards set forth in Fed. R. Evid. 702. For these reasons, as analyzed above, Defendants respectfully request the Court strike Dr. Tomaras' causation opinions from the record and bar such testimony at the trial of this matter.

22

Dated this 21st day of April, 2020.


> **WILSON, ELSER, MOSKOWITZ,**
> **EDELMAN AND DICKER, LLP**
>
> */s/ Eleanor G. Jolley*
> Jeffrey W. Melcher
> GA Bar No. 501180
> W. Shawn Bingham
> GA Bar No. 839706
> Eleanor G. Jolley
> GA Bar No. 602577
> *Counsel for the Defendants*
>
> 3348 Peachtree Road NE
> Suite 1400
> Atlanta, Georgia 30326
> (470) 419-6650
> (470) 419-6651(fax)
> jeffrey.melcher@wilsonelser.com
> shawn.bingham@wilsonelser.com
> eleanor.jolley@wilsonelser.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the foregoing **DEFENDANTS'**

**MOTION TO EXCLUDE EXPERT TESTIMONY** by way of CM/ECF to the

following counsel of record:

John Houghton
The Houghton Law Firm, LLC
2860 Piedmont Road NE
Suite 250
Atlanta, GA 30305

William M. Cheves
Gary Martin Hays & Associates, PC
3098 Breckinridge Blvd.
Duluth, GA 30096

Dated this 21st day of April, 2020.

*/s/ Eleanor G. Jolley*
Eleanor G. Jolley
GA Bar No. 602577
