## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

NORMAN DEAN,

        Plaintiff,

v.

CHEROKEE INSURANCE
COMPANY, ROYAL TRUCKING
COMPANY and PHILIP ARTHUR
CAIN,

        Defendants.

CIVIL ACTION FILE
NO. 1:18-cv-04914-WMR

## <u>ORDER</u>

This case is before the Court on Plaintiff's Motions to Exclude Testimony of Defendants' Experts Bryce Anderson, Ph.D. [Doc. 71], Hanada Cox, CPC [Doc. 72], and Matthew McGirt, MD [Doc. 73], and on Defendants' Motion to Exclude Expert Testimony of Christopher Tomaras, MD [Doc. 74]. Upon consideration of the parties' arguments, applicable law, and all appropriate matters of record, the Court rules that Plaintiff's Motion to Exclude Testimony of Defendants' Expert Bryce Anderson, Ph.D. [Doc. 71] is **GRANTED in part** and **DENIED in part**, Plaintiff's Motions to Exclude Testimony of Defendants' Experts Hanada Cox [Doc. 72] and Matthew McGirt, MD [Doc. 73] are **DENIED**, and Defendants' Motion to Exclude

1

Testimony of Christopher Tomaras, MD [Doc. 74] is **DENIED**.  Each motion is addressed separately herein.

## I.   <u>FACTUAL BACKGROUND</u>

This lawsuit arises out of a motor vehicle accident involving Plaintiff's vehicle and a tractor-trailer driven by Defendant Phillip Cain that occurred in the early morning on October 26, 2016, in Carroll County, Georgia. Plaintiff was traveling southbound in the left lane of Highway 61 when Defendant Cain attempted to merge into the left lane to turn left onto I-20 eastbound, colliding with the passenger's side of Plaintiff's vehicle. (Doc. 85-4 at 2-4; Doc. 85-3 at 13 (transcript pp. 42-43)).  At the scene of the accident, Plaintiff reported lower back pain to the responding officer, but refused an ambulance. (Doc. 85-4 at 4).  Later in the day, Plaintiff sought medical treatment for his persistent pain. (Doc. 85-4 at 8 (transcript p. 250)).  Plaintiff was later told by his treating physician that he had sustained injuries from the wreck and aggravated a prior lower back condition, which required a posterior lumbar fusion surgery. (Doc. Doc. 85-5 at 18 (Depo. transcript pp. 60-61)).

After this lawsuit was filed, the parties obtained experts to support their respective theories regarding various aspects of the Plaintiff's claims for damages. The parties have now filed their respective motions to exclude that expert testimony.

## II.  LEGAL AUTHORITY ON THE ADMISSIBILITY OF EXPERT TESTIMONY

Federal Rule of Evidence 702 governs the admissibility of expert testimony in civil cases. Rule 702 provides that a witness may testify as an expert if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004).  Further, the proponent of the expert testimony bears the burden to show that the expert and the proffered testimony satisfies these requirements. United States v. Frazier, 387 F3d 1244, 1260 (11th Cir. 2004).

In determining the reliability of expert testimony, the trial court must consider (1) whether the theory or technique employed by the expert is generally accepted in the scientific community; (2) whether it has been subjected to peer review and publication; (3) whether it has been tested or is capable of being tested; and (4) the

3

known or potential rate of error of the methodology. *See* <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 592-94 (1993); <u>Seamon v. Remington Arms Co., LLC</u>, 813 F3d. 983, 988 (11th Cir, 2016).

## III.   <u>DISCUSSION</u>

### A.   <u>Plaintiff's Motion to Exclude Testimony of Bryce Anderson, PhD</u>

Bryce Anderson, Ph.D. is a consultant with a company called Anderson Consulting, LLC and is proffered by Defendants as an expert in biomechanical engineering to testify as to the mechanics involved in the accident and the relative force exerted upon Plaintiff's body during the collision. (Doc. 54 at 3; Doc. 54-1 at 17).  Anderson possesses a PhD in industrial engineering, with an area of specialty in engineering mechanics in crash reconstruction and the effects of force and acceleration on the human body.  He has also testified previously in other cases as an expert in biomechanics and as an accident reconstruction expert, a field in which he has worked for more than fifteen (15) years. (Doc. 54-1 at 17-21; Doc. 83-1 at 13 (Depo. transcript p. 11:1-8)).

Anderson was retained by Defendants to reconstruct the circumstances of the accident and opine as to the kinematic forces that were exerted upon Plaintiff's body during the collision. (Doc. 83 at 6).  To that end, Anderson performed a "photogrammetric analysis" of the photographs of Plaintiff's damaged vehicle to calculate the amount of acceleration and force that had been exerted during the crash.

4

(Doc. 83-1 at 34-36 (Depo. transcript pp. 32-34)).  Based on this analysis, which included his consideration of deposition testimony and other evidence concerning the circumstances of the crash, Anderson formed opinions on such matters as the kinematics or kinetics involved in the impact, the amount of acceleration exerted on Plaintiff's body, and the avoidability of the wreck. (Doc. 54-1 at 10-11).  Additionally, however, Anderson opines that the amounts of acceleration and force exerted during the collision were insufficient to cause the lumbar disc injuries claimed by Plaintiff. (Doc. 54-1 at 10; Doc. 83-1 at 90 (Depo. transcript p. 88:3-12)).

Anderson testified that he has education and training in determining what effect the force of a car crash has on human tissue generally.  He further testified that it is possible for an expert to conduct a kinematic analysis to determine what the specific injury thresholds are for lumbar disc herniation *if* the expert knows the strength of the materials that comprise the human spinal column, but he conceded that he has not done such an analysis in this case (Doc. 83-1 at 89 (Depo. transcript p. 87:1-17)), and that any evidence concerning the diagnosis and cause of Plaintiff's specific injury should be left to medical professionals. (*Id*. at 90-91 (Depo. transcript pp. 88:6-7 and 89:8-21)).  Further, the only testing that Anderson has performed using this type of kinematic analysis involved the effect of the force that projectiles (bullets) have when fired into the bones of cadavers, not the effect of the force that

a motor vehicle collision has on spinal disc material. (Doc. 83-1 at 90-91 (Depo. transcript p. 88:13-25 through p. 89:1-7)).

Plaintiff moves to exclude Anderson's expert testimony on the grounds that (1) Defendants did not identify Anderson as a testifying witness until nearly the end of the extended discovery period; (2) Anderson's methodology (photogrammetry), in whole and as applied, is unreliable and therefore inadmissible under Fed. R. Evid. 702 and <u>Daubert</u>; and (3) certain portions of Anderson's report and testimony exceed his qualifications as an expert in biomechanical engineering because he appears to delve into the realm of giving a medical causation opinion. (*See* Doc. 71, *generally*).

### 1.     <u>Timeliness of disclosure</u>

Plaintiff seeks to have Anderson's testimony excluded on a procedural basis because Defendants did not designate him as a testifying expert or provide his expert report in a timely manner. (*See* Doc. 71-1 at 10-12).  In support of his argument, Plaintiff cites Local Rule 26.2 of the Northern District of Georgia, which provides in pertinent part:

> Any party who desires to use the testimony of an expert witness shall designate the expert witness sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

LR 26.2(C), NDGa.

The Eleventh Circuit has utilized a three factor test to decide if the exclusion of an expert is warranted where disclosure is delayed: "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d 1339, 1353 (11th Cir. 2004). Here, Plaintiff's arguments for exclusion center on the issue of prejudice.

Defendants gave notice that Anderson was being designated as an expert witness and produced his Rule 26 report to Plaintiff with only eleven days remaining in the extended discovery period. Plaintiff also points out that Anderson had generated his report three weeks prior to its production to Plaintiff. (Doc. 71-1 at 11; *see also* Doc. 71-7; Doc. 71-8 at 9-10 (Depo. transcript pp. 23-26)). Plaintiff offers two prejudicial consequences for the delay: (1) it would make it a virtual certainty that Plaintiff would be unable depose Anderson; and (2) with so few days left in the discovery period, Plaintiff would be unable to make a timely determination as to whether to retain and designate their own rebuttal expert. (Doc. 71-1 at 11-12).

In regard to the first issue, the record shows that Plaintiff's counsel deposed Anderson after he was designated as an expert and produced his report to Plaintiff (*see* Doc. 71-8), and there has been no indication that this deposition was impacted by the timing of Defendants' disclosure. Indeed, Plaintiff has conceded that he was

able to diligently explore Anderson's opinions at that deposition. (*See* Doc. 90 at 2). Therefore, the Court finds that Plaintiff's argument on the first issue is without merit.

The Court finds that Plaintiff's argument with regard to the second issue is also without merit.  Defendants' disclosure of the report may not have been prompt, but it was consistent with the Federal Rules of Civil Procedure.  Specifically, Rule 26(a)(2)(D) provides that "[a] party must make [expert testimony] disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial[.]"  Here, the disclosure was certainly more than 90 days prior to trial, as the trial has yet to be scheduled.  Furthermore, the disclosure of Anderson and his report occurred within the time period for discovery as provided by the Court's order extending discovery to January 24, 2020. (Doc. 41).  Although Plaintiff's counsel argues that he had only eleven days in which to determine whether to obtain a rebuttal expert, the Court notes that the involvement of an accident reconstruction expert in car wreck litigation is not a novel matter that would require significant contemplation by counsel. *See* Massee v. State Farm Mut. Auto. Ins. Co., 128 Ga. App. 439, 444, 197 S.E.2d 459, 462 (1973) ("Use of expert witnesses to reconstruct the sequence of events in automobile collisions has now become commonplace").  As Plaintiff could have reasonably anticipated the possible need for such a rebuttal expert under the facts of this case, the Court finds that Plaintiff

should not have been prejudiced by the shortened time period in which to determine whether to obtain a rebuttal expert.  Therefore, to the extent Plaintiff asks the Court to exclude Anderson's expert testimony based on the timeliness of the disclosure, the motion [Doc. 71] is DENIED.

### 2. Admissibility of Bryce Anderson's Photogrammetric Analysis under Rule 702 and Daubert

#### a. Methodology and Data

Plaintiff argues that photogrammetry, the scientific method used by Anderson to formulate his report, is unreliable. (*See* Doc. 71-1 at 14-17).  The Court finds this argument to be without merit.

Photogrammetry has long been recognized as a reliable method of accident and crime investigation that uses information gleaned from photographs to make various calculations and, in turn, form opinions regarding the circumstances surrounding the subject matter that the photographs depict. *See* United States v. Kyler, 429 F. Appx. 828, 830 (11th Cir. 2011); United States v. Williams, 235 F. App'x 925, 928-29 (3d Cir. 2007); United States v. Quinn, 18 F.3d 1461, 1464-65 (9th Cir. 1994); Gecker v. Menard, Inc., No. 16 CV 50153, 2019 WL 3778071, at *4 (N.D. Ill. Aug. 12, 2019).  Thus, the scientific community and judiciary have recognized photogrammetry as a generally accepted, tested, and reliable method of accident reconstruction.   Therefore, to the extent Plaintiff's motion to exclude

Anderson's testimony is based upon the scientific reliability of photogrammetry, the motion [Doc. 71] is DENIED.

Plaintiff also argues that Anderson's testimony should be excluded based upon the reliability or accuracy of the data or information he used in his calculations and his failure to establish the accuracy of his conclusions. (*See* Doc. 71-1 at 14-17). However, such matters are not the proper focus of a challenge to the admissibility of expert testimony under Rule 702 and Daubert.

As this District and the Eleventh Circuit have routinely held, any challenge to an expert's reliance on faulty data or to the accuracy of an expert's conclusions is to be explored on cross-examination and is not relevant in determining of the admissibility of the proffered expert's opinions. *See* Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011); Coward v. Forestar Realty, Inc., Civil Action File No. 4:15-CV-0245-HLM, 2018 WL 1980368, at *18 (N.D. Ga. Feb. 20, 2018) ("Although the Daubert inquiry is flexible, the Court's 'focus when assessing reliability must be solely on principles and methodology, not on the conclusions that they generate'") (citations omitted); UCB, Inc. v. Teva Pharmaceuticals USA, Inc., Civil Action No. 1:12-CV-4420-CAP, 2015 WL 11199058, at *7 (ND. Ga. Mar. 18, 2015) ("While Teva and its damages expert . . . do not believe it is proper to include post-entry data, its concern can be properly addressed during cross-examination of the witness and through presenting contrary evidence rather than exclusion of his

expert testimony"); <u>Mcgarity v. FM Carriers, Inc.</u>, No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*").

In this case, the Court finds that Anderson has established that he is qualified to testify competently regarding his photogrammetric analysis in this case (s*ee* Doc. 54-1 at 17-21; Doc. 83-1 at 13 (Depo. transcript p. 11:1-8)) and that his testimony will assist the trier of fact to understand the evidence and determine facts at issue – i.e., the mechanics involved in the accident (accident reconstruction) and the amount of kinetic force that was exerted upon Plaintiff's body during the accident.  It is not this Court's role as gatekeeper of the evidence to determine the credibility or correctness of Anderson's proffered testimony.  In sum, Plaintiff's contentions go to the weight of Anderson's opinions and are more proper matters for cross-examination rather than the determination of the admissibility of his opinions. Therefore, to the extent Plaintiff's motion to exclude Anderson's testimony is based the reliability of the data or information that Anderson used in his photogrammetric methodology or the correctness of his conclusions, the motion is denied.

### b.  Medical Causation and Diagnosis Testimony

In this case, Anderson has been proffered by Plaintiff to give expert testimony as a biomechanical engineer regarding the mechanics involved in the accident and

the relative force exerted upon Plaintiff's body during the collision. (*See* Doc. 54 at 3; Doc. 54-1 at 17). Thus, the subject matter of Anderson's testimony must align with this area of expertise. *See* City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir.1998).

Plaintiff argues that Anderson, though a biomechanics expert, is not a medical doctor and is therefore not qualified to offer an opinion as to whether the collision caused Plaintiff's injuries. Although Defendants contend that Anderson has not given any testimony regarding the cause of Plaintiff's alleged injuries (*see* Doc. 83 at 23), he has opined that the collision could *not* have caused the injuries. (*See* Doc. 54-1 at 10; Doc. 83-1 at 92 (Depo. transcript p. 90:10-23)). Specifically, Anderson opines in his report that "there is no resultant force generated [in the accident] that would be expected to cause injury that would be consistent with Mr. Dean's diagnoses" and that "there is no foundation for lumbar spinal damage, the cervical disc displacement, the disc slippage in the cervical vertebrae, or the left leg pain that are alleged to have arisen from the subject event." (*See* Doc. 54-1 at 10). Further, in his deposition, Anderson essentially disagrees with the treating physician's diagnosis of Plaintiff's injuries. (*See* Doc. 83-1 at 92 (Depo. transcript p. 90:10-23)). Thus, it appears that there is an overlap between Anderson's testimony regarding the forces of the collision that were exerted on Plaintiff's body (or the lack thereof) and

the lack of causation for his specific injuries, the latter of which may cross the threshold into medical testimony.[1]

In <u>Osbon v. KLLM Transport Services, LLC, et al.</u>, Case No. 1:15-CV-3591-ODE (N.D. Ga. Jan. 22, 2018), the district court addressed a similar issue regarding the admissibility of testimony from the same expert here – Bryce Anderson.  In <u>Osbon</u>, the plaintiff had likewise challenged Anderson's qualifications, as a biomechanical engineer, to offer opinions relating to the medical diagnosis and causation, or lack thereof, of injuries allegedly sustained in an automobile accident. Relying on <u>Bowers v. Norfolk Southern Corp.</u>, 537 F. Supp. 2d 1343 (M.D. Ga. 2007) and <u>Hankla v. Jackson</u>, 305 Ga. App. 391 (Ga. Ct. App. 2010), the <u>Osbon</u> court concluded that Anderson was qualified to render opinions as to the forces generated in the automobile accident and the *general* types of injuries those forces could cause, but that he was not qualified to offer testimony regarding the cause of plaintiff's particular injury or the accuracy of the plaintiff's medical diagnosis. (*See* Case No. 1:15-CV-3591 at Doc. 129, p.17).

The Court finds the same principles and reasoning that applied in <u>Osbon</u>, <u>Bowers</u>, and <u>Hankla</u> also apply here.  Although a biomechanical engineer, such as

---

[1] Anderson is not a medical doctor. Furthermore, he concedes that has no specific knowledge concerning lumbar disc herniations and has not performed any testing related to an auto collision that resulted in a lumbar disc herniation. (*See* Doc. 83-1 at 88-91 (Depo. transcript pp. 86-89)).

Anderson, may be qualified to render an opinion as to the forces a particular accident generated and the general types of injuries those forces could cause, a biomechanical engineer is typically not permitted to offer testimony about the exact cause of a particular injury because he or she lacks proper medical training. *See* <u>Osbon</u>, Case No. 1:15-CV-3591 at Doc. 129, p. 16.; <u>Bowers</u>, 537 F. Supp. 2d at 1378; <u>Hankla</u>, 305 Ga. App. at 397-398.  This make logical sense because a biomechanical engineer is typically not trained to take into account a particular plaintiff's tolerance levels or preexisting conditions as a medical professional is trained to do.

For the above reasons, the Court finds that Anderson is qualified to offer his opinions on such matters as the forces that were generated in the collision, the amount of force that was exerted on Plaintiff's body, and the *general* types of injuries those forces are capable of causing.  Thus, to the extent Plaintiff asks the Court to exclude such opinion testimony, the motion [Doc. 71] is DENIED.  The Court finds, however, that Anderson is not qualified to offer any opinion as to the medical causation of Plaintiff's particular injuries or the accuracy of the treating physician's diagnosis.  Thus, as to the testimony that delves into the issues of medical causation and diagnosis, the motion [Doc. 71] is GRANTED.

### B.    <u>Plaintiff's Motion to Exclude Testimony of Hanada Cox</u>

Plaintiff is seeking to recover special damages for the medical expenses he incurred as a result of the alleged injuries he sustained in the accident.  To rebut the

reasonableness of Plaintiff's submitted expenses,[2] Defendants retained Hanada Cox, a Certified Procedural Coder (medical billing analyst), to review the Plaintiff's medical records and offer expert testimony regarding the medical providers' billing practices and the reasonableness of the billed expenses in comparison with usual and customary charges for the services rendered. (Doc. 82 at 2; *see also* Doc. 55-1). After conducting her analysis of Plaintiff's medical records and invoices, Cox concluded that numerous items were billed at rates higher than reasonable industry standards. (Doc. 51-1 at 4).

Plaintiff moves to exclude Cox's expert testimony on the grounds that (1) Defendants did not identify Cox Anderson as a testifying witness until nearly the end of the extended discovery period; and (2) Cox's testimony is inadmissible under Fed. R. Evid. 702 and Daubert.

### 1.   Timeliness of disclosure

In regard to the timeliness issue, Plaintiff reiterates the same argument that it raised in seeking the exclusion of defense expert Bryce Anderson.  Likewise, the Court is unpersuaded that the timing of the disclosure of Cox and her report has prejudiced Plaintiff such that the exclusion of her testimony would be warranted.  As with Anderson, Plaintiff was able to depose Cox and, therefore, had an opportunity

---

[2] Under Georgia law, a plaintiff may only recover medical expenses that are reasonable and necessary. *See* MCG Health, Inc. v. Kight, 325 Ga. App. 349, 353, 750 S.E. 2d 813, 817 (Ga. Ct. App. 2013) (citations omitted).

to diligently explore her opinions.  Furthermore, the disclosure of Cox and her report occurred within the time period for discovery as provided by the Court's order extending discovery to January 24, 2020. (Doc. 41).  Although Plaintiff's counsel argues that he had only five days in which to determine whether to obtain a rebuttal expert, the Court notes that the need to establish or rebut the reasonableness of medical expenses in tort litigation is not a matter that would require significant contemplation by counsel.  Therefore, to the extent that Plaintiff asks the Court to exclude Cox's testimony based on the timeliness of her disclosure, the motion [Doc. 72] is DENIED.

### 2.    Admissibility under Rule 702 and Daubert

Plaintiff argues that Cox's expert opinion testimony should be excluded because her methodology for determining the reasonable value of the medical expenses is unreliable.  The Court is unpersuaded by this argument.

In preparing her report, Cox reviewed all of Plaintiff's invoices from each of Plaintiff's medical providers. (Doc 55-1 at 1-2).  She reviewed the providers' services based on Current Procedural Terminology ("CPT") coding and ensured that CPT codes that were entered for each invoiced item complied with the National Correct Coding Initiative and American Medical Association's guidelines for proper CPT coding. (*Id*. at 2).  Cox then audited the fees charged for those services by comparing them to customary medical billing values (government statistics)

16

contained in recognized industry publications such as Wasserman's Physicians' Fee Reference, PMIC's Medical Fees, and Optum's National Fee Analyzer. (*Id*.)   In assessing the reasonable value for the services that were provided to Plaintiff, Cox used the median value of the 75th percentile of the medical fees and expenses published in those reference materials. (*Id*.)

In challenging the reliability of Cox's methodology, Plaintiff takes issue with the reference materials relied upon by Cox and the accuracy of the data contained therein.  However, the record shows that the reference materials are industry publications that are commonly relied upon by medical professionals, insurance companies, and others involved in the medical industry to keep up to date with recent trends in fees charged for medical services. (Doc. 72-7 at 8-9, 16 (Depo. transcript pp. 27, 29-31, 60)).  Although Plaintiff points out that one of the publications, Wasserman's Physicians' Fee Reference, includes a disclaimer that the published information may or may not prove to be accurate and that it "should not be the sole basis for making decisions about a medical practice or the marketplace in general," the Court notes that the information is actual data that was collected by the Department of Health and Human Services to show the range of medical fees that have been charged historically for the same medical services.  Whether the historical data is effective in determining the reasonableness of the fees charged in this particular case is a question of fact for the jury.  As the reference materials and the

historical data contained therein provided a factual basis for Cox's opinions, it is for opposing counsel to inquire into any perceived weaknesses in that factual basis through cross-examination or the presentation of rebuttal evidence. *See* <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003); <u>Webb v. Carnival Corp.</u>, 321 F.R.D. 420, 423 (S.D. Fla 2017). In sum, Cox's reliance on the reference materials and historical data bear on the weight of Cox's opinion testimony rather than its admissibility.

Plaintiff also takes issue with Cox's use of the 75th percentile in forming her opinion regarding the reasonable value of Plaintiff's submitted medical expenses. Specifically, Plaintiff contends that Cox was unable to explain how the 75th percentile, as opposed to a higher or lower percentile, is more accurate in determining reasonable value. However, in the Court's view, Cox could have used any percentile that she saw fit, and Plaintiff would be free to inquire into her choice of percentile upon cross-examination. Here, Cox testified that she used the 75th percentile because "it is the percentile that I have used throughout my career. It is the most relied upon. It is not the lowest, it is not the highest. It is the most objective percentile[.]" (Doc. 72-7 at 8 (Depo. transcript pp. 25-26)). The Court finds Plaintiff's argument on this issue is without merit, and that any perceived weaknesses regarding Cox's use of the 75th percentile in forming her opinion can be adequately addressed on cross-examination.

For the above reasons, the Court finds that Cox is qualified to offer her opinions as to the medical providers' billing practices and the reasonableness of the billed medical expenses. Therefore, Plaintiff's motion to exclude Cox's opinion testimony [Doc. 72] is DENIED.

### C.     Plaintiff's Motion to Exclude Testimony of Matthew McGirt, MD

Defendants intend to offer Dr. McGirt as a medical causation expert to refute Plaintiff's claims that the subject accident caused Plaintiff's alleged spinal injuries. (Doc. 81 at 2-3; Doc. 54-2). Plaintiff moves to exclude Dr. McGirt's expert testimony on the sole ground that Defendants did not identify him as a testifying witness until nearly the end of the extended discovery period. [Doc. 73].

In his motion, Plaintiff advances essentially the same argument regarding timeliness that it raised in seeking the exclusion of defense experts Bryce Anderson and Hanada Cox. (*See* Doc. 73, *generally*). Likewise, the Court is unpersuaded that the timing of the disclosure of Dr. McGirt and his report has prejudiced Plaintiff such that the exclusion of his testimony would be warranted. As with Anderson and Cox, Plaintiff was able to depose Dr. McGirt and, therefore, had an opportunity to diligently explore his opinions. (*See* Doc. 73 at 6). Furthermore, the disclosure of Dr. McGirt and his report occurred within the time period for discovery as provided by the Court's order extending discovery to January 24, 2020. (Doc. 41). Although Plaintiff's counsel argues that he had only eleven days in which to determine whether

19

to obtain a rebuttal expert, the Court notes that the need to establish or rebut evidence of medical causation in tort litigation is not a matter that would require significant contemplation by counsel. Therefore, Plaintiff's motion to exclude Dr. McGirt's testimony [Doc. 73] is DENIED.

### D.    Defendants' Motion to Exclude Testimony of Christopher Tomaras, MD

Plaintiff intends to call Dr. Tomaras, who was Plaintiff's treating physician (neurosurgeon), to testify regarding the nature of Plaintiff's injuries, the proximate cause for those injuries, and his opinion that it was more likely than not that the subject accident made Plaintiff's lumbar fusion surgery necessary. (Doc. 84). Defendants seek to exclude his testimony as to causation on the bases that he was not properly disclosed as an expert, that he has not provided a Rule 26 expert report, and that his causation opinion testimony does not satisfy the standards of admissibility set forth in Fed. R. Evid. 702 and Daubert.[Doc. 74].    Upon consideration of the arguments presented, the Court finds that the exclusion of his testimony is not warranted.

### 1.    Disclosure of Dr. Tomaras and Rule 26 Requirements

Although Defendants contend that Plaintiff failed to identify Dr. Tomara as an expert during discovery, the record shows that Plaintiff first identified Dr. Tomaras as a potential "non-retained Expert Witness" at the onset of discovery in his initial disclosures. (*See* Doc. 84-4 at 4 (Response No. 4), 16).  In response to

Defendant Cain's first interrogatories, Plaintiff stated that he anticipated calling "non-retained medical professionals" at trial to offer opinion testimony regarding the causation of his injuries. (Doc. 74-1 at 4 (Response No. 3)).  Shortly thereafter, in response to Defendant Royal Trucking Company's first interrogatories, Plaintiff identified Dr. Tomaras as the doctor who had advised him that surgery was required to address the injuries that he sustained in the accident. (Doc. 84-4 at 33-34 (Response No. 16)).

Defendants apparently took notice of the above information, as they later obtain and disclosed their own neurological expert, Dr. Matthew McGirt, who likewise will be testifying at trial as to the issue of causation for Plaintiff's injuries and subsequent surgery. (*See* Doc. 54; Doc. 54-2).   Furthermore, Defendants apparently recognized the potential scope and significance of Dr. Tomaras' anticipated testimony, as he was the only medical provider or doctor on Plaintiff's list that Defendants sought to depose.[3]  Defense counsel was indeed able to depose Dr. Tomaras (*see* Doc. 74-2), whereupon he asked Dr. Tomaras a series of questions that were clearly designed to illicit an opinion on causation. (*Id.* at 16-25 (Depo. transcript pp. 14-23)).  Notably, Plaintiff's counsel confirmed at that deposition that he intended to call Dr. Tomaras at trial to offer his opinion as to the causation of

---

[3] Plaintiff's list of potential expert witnesses included over twenty other medical professionals. (*See* Doc. 84-4 at 16-17, 27-31).

Plaintiff's injuries and subsequent surgery, and defense counsel did raise any objection on procedural grounds at that time. (*Id*. at 61-63 (Depo. transcript at pp. 59-61)).

Defendants now contend that Dr. Tomaras' causation opinion testimony should be excluded because he did not provide an expert report as required by Fed. R. Civ. P. 26(a)(2)(B).  However, a treating physician, such as Dr. Tomaras, is not required to provide a Rule 26(a)(2)(B) report in order to testify regarding injury causation so long as his opinion on causation was formed and based upon observations made during the course of treatment. *See* Kimbrough v. Weidner, No. 1:17-CV-774-TWT, 2018 WL 3575061, at * 3 (N.D. Ga. July 24, 2018); Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-CV-01094-JEC, 2013 WL 1189493, at ** 4-6 (N.D. Ga. Mar. 21, 2013); Jensen v. Carnival Corp., No. 10–24383, 2011 U.S. Dist. LEXIS 108727, at * 3 (S.D. Fla. Sept.25, 2011)).

Here, it appears that Dr. Tomaras' causation opinion testimony is based on Plaintiff's personal account of the accident, Plaintiff's medical history as reported to him by Plaintiff, and the medical records reviewed during the course of Plaintiff's treatment. (Doc. 74-2 at 53-54, 60 (Depo. transcript pp. 51-52, 58)).  As there is no indication in Dr. Tomaras' testimony that he intends to rely on hypotheticals or anything garnered outside the course of Plaintiff's treatment as a basis for his opinion, the Court finds that Dr. Tomaras was not required to provide a formal report

under Rule 26(a)(2)(B).[4] *See* <u>Kimbrough</u>, 2018 WL 3575061, at * 3; <u>Kondragunta</u>, 2013 WL 1189493, at ** 4-6; <u>Jensen</u>, 2011 U.S. Dist. LEXIS 108727, at *3.

But the issue of Plaintiff's compliance with Rule 26(a)(2)(C) remains. Under subsection (C), if the expert is not required to provide a written report under subsection (B), the party who intends to offer the expert's testimony at trial must disclose "(i) the subject matter on which the witness is expected to present [expert testimony]; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii); *see also* <u>Kondragunta</u>, 2013 WL 1189493, at * 6. Here, Plaintiff did not disclose that Dr. Tomaras, specifically, would be testifying as to causation, nor did he provide a summary of his opinions. And the fact that Plaintiff provided all his medical records and medical illustrations or exhibits to Defendants (*see* Doc. 84-4 at 32-33, 42-43, 53-56, 60-63) does not mean that Plaintiff has essentially satisfied the requirements of Rule 26(a)(2)(C). <u>Kondragunta</u>, 2013 WL 1189493, at *6. Yet, while Plaintiff failed to comply with Rule 26(a)(2)(C), the exclusion of Dr. Tomaras' causation opinion testimony is not

---

[4]  To the extent that Defendants argue that Dr. Tomaras may exceed the scope of his expertise as a treating physician in testifying as to medical causation because his testimony may delve into a biomechanical opinion of the forces involved in the accident, the Plaintiff has indicated that he does not intend to introduce any biomechanical opinion testimony from Dr. Tomaras. (Doc. 84 at 13-14). Should the issue arise at trial, however, the Court will address it upon timely objection.

automatic.  The Court must still determine whether exclusion is warranted under Fed. R. Civ. P. 37(c)(1). Id. at * 7.

Under Rule 37(c)(1), a district court may excuse a party's failure to comply with the requirements of Rule 26(a) if it finds that the failure is harmless.  The Court notes that other judges in this district have applied a five-factor test when determining whether the failure to properly disclose the information required by Rule 26(a) was harmless. *See* Kondragunta, 2013 WL 1189493, at *7; Bruce v. Classic Carrier, Inc., No. 1:11-cv-01472-JEC-JCF, Oct. 31, 2012 Order of Mag. J. Fuller, [Doc. No. 50 at 7-10]; Cambridge Univ. Press v. Becker, No. 1:08-cv-1425-ODE, 2010 WL 6067575, at * 3 (N.D.Ga. Sept. 21, 2010).  Those factors are:

(1)     the surprise to the party against whom the evidence would be offered;

(2)     the ability of that party to cure the surprise;

(3)     the extent to which allowing the evidence would disrupt the trial;

(4)     the importance of the evidence; and

(5)     the nondisclosing party's explanation for its failure to disclose the evidence.

Id.

In this case, it is reasonable to assume that Defendants were aware that Dr. Tomaras would likely be offered to testify on the issue of causation because, as noted above: Plaintiff initially identified Dr. Tomaras as a non-retained expert witness at the beginning of discovery; Plaintiff also disclosed that non-retained medical

professionals (such as Dr. Tomaras) would likely be called at trial to offer opinion testimony regarding the causation of Plaintiff's injuries; Defendants apparently focused on the importance of Dr. Tomaras as an expert witness because they began arranging his deposition months before the close of discovery and elected not to depose any of the other medical professionals that had been identified by Plaintiff; Defendants obtained and disclosed their own neurosurgeon expert (like Dr. Tomaras) to testify as to the issue of causation; Defense counsel later deposed Dr. Tomaras and asked him a series of questions that were designed to elicit an opinion on causation; and defense counsel did not voice any procedural objections or concerns at Dr. Tomaras' deposition when Plaintiff's announced his intent to have Dr. Tomaras offer expert opinion testimony on the issue of causation at trial. Given these facts, the first three factors of the above-referenced "harmless" test weigh in favor of Plaintiff.

As for the fourth factor, the Court finds that the importance of Dr. Tomaras' causation opinion testimony is clearly evident in this case. Without such testimony, a significant portion of Plaintiff's claim for special damages (particularly that which relates to his 2017 surgery) would be eliminated. Furthermore, the importance of Dr. Tomaras' causation opinion testimony far outweighs any prejudice perceived by Defendants, as they had the opportunity to depose Dr. Tomaras and they have their

own expert, Dr. McGirt, who is poised to rebut Dr. Tomaras' opinions as to the medical causation of Plaintiff's injuries and surgery.

For the above reasons, the Court finds that Plaintiff's failure to comply with the disclosure requirements of Rule 26(a)(2)(C) is harmless and, therefore, does not warrant the exclusion of Dr. Tomaras' testimony. Instead, the Court hereby DIRECTS Plaintiff to provide a disclosure to Defendants which complies with Rule 26(a)(2)(C) within fourteen (**14**) days of this Order.

### 2.   <u>Admissibility of Dr. Tomaras' Causation Opinion Testimony under Rule 702 and Daubert</u>

Defendants argue that Dr. Tomaras's causation opinion testimony is not based on sufficient data or reliable methodology and that his causation testimony would fail to assist the trier of fact.  According to Defendants, Dr. Tomaras failed to rely on pre-accident medical records and, instead, relied solely on Plaintiff's subjective statements of his injuries and medical history, temporal proximity, and post-accident imaging in forming his opinions as to causation.

In <u>Cooper v. Marten Transp., Ltd</u>., 539 F. App'x 963 (11th Cir. 2013), the Eleventh Circuit held that the district court did not manifestly abuse its discretion in excluding the causation opinion testimony of the plaintiffs' treating physician and surgeon because they failed to consider the plaintiffs' histories of back pain prior to the accident and, instead, employed a methodology that "amounted to simple reliance on a temporal relationship." <u>Id</u>. at 966-67.  Unlike the present matter,

Cooper involved a 2010 subject accident and a prior injuries from a recent collision that occurred in 2009, and neither of the experts could explain "why they believed the 2010 collision caused the Coopers' injuries, rather than the 2009 collision or their preexisting conditions." Id. at 966.

Here, Dr. Tomaras was aware that Plaintiff had two prior lumbar disc surgeries, in 1989 and 1990, and he ruled those surgeries out as the cause of Plaintiff's reported pain and need for surgery because they were too remote (having occurred decades ago) and Plaintiff had been doing well and reported no symptoms of pain in his back before the accident at issue in this case. (*See* Doc. 74-2 at 13-15, 37 (Depo. transcript pp. 11-13, 35)).  Also, Dr. Tomaras not only conferred with Plaintiff about his medical history, he cross-referenced that reported history against the CT scan he ordered. (*Id.* at 23 (Depo. transcript at p. 21)). And this post-accident imaging, to the extent that it empirically demonstrates Plaintiff's medical history, constitutes reliable data upon which Dr. Tomaras may base his opinions on causation.  Additionally, Dr. Tomaras considered Plaintiff's prior medical history and medical conditions and ultimately concluded that there was nothing there that would alter his opinions. (*Id.* at 80 (Depo. transcript p. 78)).

To support their assertion that Dr. Tomaras is relying on a "temporal proximity" and "post-hoc rationalization"' methodology to form his causation opinion, Defendants point only to testimony in which Dr. Tomaras testified that

Plaintiff's spinal injury "could have been an acute process," that a pre-accident MRI "could" have shown the same information, and that, due to Plaintiff's degenerative disc disease as a result of aging, it was "possible" that surgery would have been required anyway. (*See* Doc. 74 at 19; see also Doc. 74-2 at 21-22, 34 (Depo. transcript pp. 19-20, 32)). The Court finds that this testimony does not show that Dr. Tomaras employed a temporal proximity or post-hoc rationalization methodology. Rather, this testimony shows that Dr. Tomaras was simply acknowledging what is possible about Plaintiff's condition, as opposed to what he believes is medically probable based on his analysis of Plaintiff's medical history and the medical records that he reviewed during the course of Plaintiff's treatment.  Contrary to Defendants' assertion, the above-referenced testimony does not establish that Dr. Tomaras reached his conclusions by utilizing an unreliable methodology. Whether there are alternative possibilities of Plaintiff's injury are appropriate areas of inquiry on cross-examination, but those possibilities do not render Dr. Tomaras's opinions inadmissible or unreliable. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993).

Lastly, the Court finds that Dr. Tomaras' causation opinion testimony will assist the jury in determining the issues of causation and damages, which are material issues in this case.

For the above reasons, Defendants' motion to exclude Dr. Tomaras' testimony [Doc. 74] is DENIED.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

- Plaintiff's Motion to Exclude Testimony of Bryce Anderson [Doc. 71] is **GRANTED in part** as to any opinion testimony regarding the medical causation of Plaintiff's particular injuries or the accuracy of Plaintiff's diagnosis and **DENIED in part** in all other respects;

- Plaintiff's Motion to Exclude Testimony of Hanada Cox [Doc. 72] is **DENIED**;

- Plaintiff's Motion to Exclude Matthew McGirt, MD [Doc. 73] is **DENIED**;

- Defendants' Motion to Exclude Expert Testimony of Christopher Tomaras, MD [Doc. 74] is **DENIED**.   However, Plaintiff is **DIRECTED** to provide a disclosure to Defendants which complies with Rule 26(a)(2)(C) within fourteen (**14**) days of this Order.

**IT IS SO ORDERED**, this 22nd day of March, 2021.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE